1

2

3

4        UNITED STATES  DISTRICT COURT

5          Northern District of California

6

7   UNITED STATES OF AMERICA,

8              Plaintiff,                    No.   C 11-5112 MEJ

         v.                          **ORDER DENYING CROSS MOTIONS
9                                    FOR SUMMARY JUDGMENT**
    JIE ZHONG,                       (Dkt. Nos. 22, 30)
10
               Defendant.
11   _____/

12              **I.  INTRODUCTION**

13        On October 19, 2011, Plaintiff, the United States of America, filed this action pursuant to 8

14   U.S.C. § 1451(a), seeking to revoke and set aside the order admitting Defendant Jie Zhong to

15   citizenship and to cancel his Certificate of Naturalization.[1]  Compl. ¶ 1, Dkt. No. 1.  Plaintiff and

16   Defendant now each move for summary judgment.  Dkt. Nos. 22 (Pl. Mot.), 30 (Def. Mot).

17        Plaintiff contends that Defendant is subject to denaturalization on three grounds.  First, it

18   contends that at the time he was naturalized, Defendant was not lawfully admitted to the United

19   States for permanent residence because he obtained asylee status based on a fraudulent claim that he

20   practiced Falun Gong and because he previously tried to procure a visa predicated on a fraudulent

21   marriage to his second wife, both of which rendered him inadmissible for naturalization.  Pl. Mot. at

22   1.  Second, Plaintiff asserts that Defendant illegally procured his naturalization because he did not

23   satisfy the good moral character requirement after he provided false testimony under oath when he

24   testified about his asylum application.  *Id*. at 1-2.  Third, Plaintiff argues that Defendant procured his

25   naturalization by concealing and willfully misrepresenting material facts about his asylum fraud to

26   the United States Citizenship and Immigration Services ("USCIS") throughout his naturalization

27   process.  *Id*. at 2.  Plaintiff thus urges the Court to grant its Motion and revoke Defendant's

28   _____

              [1]  This court has jurisdiction pursuant to 28 U.S.C. § 1345.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    naturalization under 8 U.S.C. § 1451(a).

2         Defendant, however, maintains that USCIS properly granted him asylum based on his

3    involvement with Falun Gong, that his second marriage was valid, and that he did not illegally

4    procure naturalization.

5         On November 29, 2012, the Court held oral argument on the parties' Motions.  After careful

6    consideration of the parties' arguments and a thorough review of the record, the Court finds that

7    genuine issues of material fact exist as to each of Plaintiff's claims, thereby preventing summary

8    judgment in favor of either party.  Accordingly, the Court **DENIES** both parties' motions and sets

9    this matter for trial.

## II.   BACKGROUND

11        Except where noted, the following facts are undisputed.  *See* Joint Statement of Undisputed

12   Facts ("JSUF"), Dkt. No. 28.

13        Defendant is a native of the People's Republic of China.  *Id.* ¶ 1.  On February 10, 1999, he

14   entered the United States at Chicago, Illinois.  *Id.*

15        The following year, on May 9, 2000, Defendant applied for asylum with the former

16   Immigration and Naturalization Service in San Francisco, now USCIS.  *Id.* ¶ 2.  In his declaration in

17   support of his asylum application and during the interview on the application, Defendant indicated

18   that he was "applying for asylum because Falun Gong (FLG) has been labeled as an 'illegal evil

19   cult' by the Chinese government and ruthlessly persecuted in P.R. China since last year."  Decl. of

20   Cory Condon, Ex. A. (DOJ-000362),[2] Dkt. No. 24.  Defendant claimed that he began practicing

21   Falun Gong with his father in 1997.  JSUF ¶ 3.  Defendant also claimed that while living in China,

22   he and his father attended weekly Falun Gong meetings, practiced Falun Gong exercises, and shared

23   his experiences.  *Id.* ¶ 4.  Defendant further represented that, in August 1998 he gave a speech to

24   fellow Falun Gong practitioners about his experiences as a Falun Gong member, and that after he

25   left China, his father was arrested and detained for one week for participating in a Falun Gong

26   _____

27        [2]  When available, the Court will cite to the BATES numbering on documents the parties
     have referenced.
28

UNITED STATES DISTRICT COURT
For the Northern District of California

sitting protest.  *Id.* ¶ 5.  In his declaration supporting his application, under a heading titled, "Why I

Fear to Return to China Now," Defendant stated:

> If I return to China, the Chinese Government will arrest me immediately because I
> had given a speech to introduce my experience in our country in 1998.  After I came
> to the U.S. I wrote two letters to my father discussing FLG, but these two letters had
> become evidence showed to my father when he was detained.  And also many
> disciples had been arrested after they return to China, that reminds me that when we
> were exercise FLG in Golden [G]ate [P]ark some people took picture, maybe that is
> employee of Chinese embassy for searching FLG practitioner.  Under such
> environment, I have no doubt that if I return to China, I would be immediately
> arrested and detain.  I could not imagine what would happen to me thereafter.  I have
> no way out but to seek protection of the U.S. government.

Condon Decl., Ex. A (DOJ-000363).  Thus, Defendant claimed that he would be arrested if he

returned to China due to his Falun Gong practice.  JSUF ¶ 6.  In support of his application,

Defendant also submitted photographs of himself practicing Falun Gong in San Francisco,

California.  *Id.*  On June 26, 2000, USCIS granted Defendant's asylum application.  *Id.* ¶ 7; Condon

Decl., Ex. B.

     A year after his asylum application was granted, on June 29, 2001, Defendant filed a Form

I-485, Application to Register Permanent Residence or Adjust Status, pursuant to Immigration and

Nationality Act ("INA") section 209, 8 U.S.C. § 1159, seeking to adjust his status from asylee to

that of a lawful permanent resident (the "first adjustment application").  *Id.* ¶ 8; Condon Decl., Ex.

C.

     On October 1, 2001, Defendant married Yue "Julia" Chen (Chen).  JSUF ¶ 9.  In April 2004,

Defendant and Chen's first child was born.  *Id.* ¶ 10.  On July 5, 2005, Defendant divorced Chen in

Nevada.  *Id.* ¶ 11; Condon Decl., Ex. E.  The divorce petition stated that they resided separately,

Chen in Nevada and Defendant in California, and that they had no children.  *Id.*

     Subsequently, on August 4, 2005, Defendant married Nicole Williams (Williams), a United

States citizen.  JSUF ¶ 12; Condon Decl., Ex. F.

     On November 25, 2005, Williams filed a Form I-130, Petition for Alien Relative, with

USCIS to obtain a visa for Defendant as the spouse of a United States citizen.  JSUF ¶ 13; Condon

Decl., Ex. G.  Concurrently, Defendant filed an I-485, Application to Register Permanent Residence

or Adjust Status, based on his marriage to Williams (the "second adjustment application").  JSUF ¶ 14; Condon Decl. Ex. H.

On February 2, 2006, USCIS approved Defendant's first adjustment application and he was adjusted to lawful permanent resident ("LPR") status, effective February 2, 2005.  JSUF ¶ 15; Condon Decl., Ex. C.  The following month, on March 9, 2006, USCIS denied Williams' I-130 Petition and Defendant's second adjustment application because he and Williams failed to appear for an interview before USCIS.  JSUF ¶ 17; Condon Decl., Exs. G, H, I.

On January 17, 2007, Defendant divorced Williams in California.  JSUF ¶ 18; Condon Decl., Ex. J.  In August 2007, Defendant and Chen's second child was born.  JSUF ¶ 19; Condon Decl., Ex. K (DOJ-000005).

On November 5, 2009, Defendant filed an N-400 Application for Naturalization with the San Francisco District Office of USCIS, based upon his putative eligibility to naturalize for having been a lawful permanent resident for at least five years.  JSUF ¶ 20; Condon Decl., Ex. K.  Part 10, question 23 of the N-400 naturalization application asked, "Have you ever given false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal?"  JSUF ¶ 22; Condon Decl., Ex. K (DOJ-000010).  In response to this question, Defendant stated "No."  JSUF ¶ 22.  On November 4, 2009, Defendant signed his N-400 application for naturalization under penalty of perjury, thereby swearing or affirming that the contents of his naturalization application were true and correct.  JSUF ¶ 23; Condon Decl., Ex. K (DOJ-000014).

Thereafter, on December 3, 2009, Defendant married Florence Ly.  JSUF ¶ 24; Declaration of Melanie Proctor, Ex. L, Dkt. No. 26.  In December 2009, a child was born to Defendant and Ly.  JSUF ¶ 24; Proctor Decl., Ex. M.

On January 22, 2010, USCIS Officer Koreti Alefosio interviewed Defendant under oath about his N-400 Application for Naturalization.  JSUF ¶ 25; Condon Decl., Ex. K; Declaration of Koreti Alefosio ¶ 3, Dkt. No. 23.  Officer Alefosio also asked Defendant whether he had ever been a member of a group, club, party, or organization anywhere in the world, including the United

UNITED STATES DISTRICT COURT
For the Northern District of California

4

UNITED STATES DISTRICT COURT
For the Northern District of California

States, and Defendant answered that he had been a member of Falun Gong.  JSUF ¶ 26; Condon Decl., Ex. K (DOJ-000011); Alefosio Decl. ¶ 6.  Officer Alefosio noted this answer on Defendant's N-400 application in red ink.  Alefosio Decl. ¶ 6.  Officer Alefosio also asked Defendant whether he had ever given false or misleading information to any United States government official while applying for any immigration benefit, to which Defendant responded that he had not.  JSUF ¶ 27; Condon Decl., Ex. K (DOJ-000012); Alefosio Decl. ¶ 9.  At the end of the naturalization interview, Defendant signed a sworn statement stating that the contents of his application, as amended during the interview, were true.  JSUF ¶ 28; Condon Decl., Ex. K (DOJ-000014).

On February 2, 2010, USCIS approved Defendant's Form N-400 application, based upon his answers on the N-400 application, his sworn testimony during the interview, and the documentation he submitted in support of the application.  JSUF ¶ 29; Condon Decl., Ex. O.

On March 1, 2010, Defendant filed for divorce from Ly in Nevada.  JSUF ¶ 20; Proctor Decl., Ex. N.  The divorce petition stated that Ly resided in Nevada and Defendant resided in California, and that they had no children.  JSUF ¶ 30.  The divorce was finalized on March 10, 2010. *Id.*

On March 10, 2010, Defendant took the oath of allegiance and was admitted to United States citizenship.  JSUF ¶ 31; Condon Decl., Ex. P.  He was issued Certificate of Naturalization number 32471265. *Id.*

On March 22, 2010, Defendant and Chen remarried.  JSUF ¶ 32; Proctor Decl., Ex. AA, Deposition of Jie Zhong at 171:14-24.  At some point thereafter, Defendant filed an I-130 Petition for Alien Relative on Chen's behalf, and she concurrently filed an application for adjustment of status.  JSUF ¶ 33.

In later 2010, USCIS Officer Corynne Condon began investigating Defendant following the grant of his naturalization application.  As part of the investigation, Officer Condon located and contacted Williams.  On November 4, 2010, Officer Condon obtained an affidavit from Williams wherein she stated:

> My name is Nicole Williams.  Yes, I married Jie Defendant.  Jie and I never had sex. We never lived together.  I married Jie as a favor and to get a little money.  Jie and I

5

UNITED STATES DISTRICT COURT
For the Northern District of California

1     had a friend name [sic] Steve who hooked us up.  But Steve took most of the money
2     and disappeared.  I've been to visit the house that Jie shared with his wife during our
    marriage, at 1009 Craftmans Dr., Hercules, CA.

3   JSUF ¶ 34; Condon Decl., Ex. R.

4       On December 7, 2010, Defendant and Chen appeared at the USCIS San Francisco District

5   Office for an interview on Chen's adjustment application, conducted by Officer Condon.  JSUF ¶ 35.

6       During the interview, Chen executed an affidavit stating:

7     My name is Yue Chen.  I know that Jie was previously married to Nicole.  I know
8     that Jie's marriage to Nicole is not real, but a favor.  I have met Nicole.

9   Condon Decl., Ex. S; JSUF ¶ 39.  Chen also answered a question from Officer Condon about

10   whether Defendant's marriage to Williams was real by writing "I didn't think so, but because of

11   Jie's Business trip of being away from home (about 1-2 days at home per week), now I'm also

12   questioning those business trips, and don't know if it is real or not."  JSUF ¶ 36; Condon Decl., Ex.

13   S (DOJ-000230).  Officer Condon also asked Chen "Have you ever been introduced, or do you

14   know, Nicole Williams?", to which Chen responded "Unknown."  JSUF ¶ 38, Condon Decl., Ex. S

15   (DOJ-000230).       During his December 7, 2010 interview with Officer Condon, Defendant

16   signed an affidavit stating:

17     My name is Jie Zhong.  I never live [sic] with Nicole.  My marriage to Nicole is
18     always for favor.  Steve arranged this marriage.  Apparently $25,000 was paid to
    Steve for the marriage.  I don't know/Nicole got how much money for that, and me
19     and Nicole never had sex.  I always lived with Julie during the marriage with Nicole.
    I marriaged [sic] to Nicole to get the green card sooner.

20

21   JSUF ¶ 40; Condon Decl., Ex. T (DOJ-000224).  Concurrently, Defendant signed a second affidavit

22   pertaining to his asylum claim, stating:

23     My name is Jie Zhong.  I previously applied for asylum.  My asylum claim was fake.
    I had never been involved with Falun Gong.  My father has never been arrested for
24     anything Falun Gong related and my father had never participated Falun Gong [sic].
    I never gave speech for anything Falun Gong related.  I never sent my Falun Gong
25     letter to my dad. . . . Asylum preparer Steve Mao told me to memorize the fake Falun
    Gong story back to year 2000.  I don't have any specific religion.  I have never been
26     practitioner Falun Gong [sic].  I don't have and never fear China (but I prefer the
    U.S.)

27

28

1   JSUF 41; Condon Decl., Ex. T (DOJ-000225).

2   Subsequently, on March 25, 2011, Officer Condon interviewed Defendant under oath a

3   second time at the USCIS San Francisco District Office.  JSUF ¶ 42; Proctor Decl., Ex. U; Condon

4   Decl., Ex. V.  At the re-interview, Officer Condon asked Defendant whether he had been truthful

5   during his prior interview:

6       Condon:       Okay, very good.  So again I just want to get a couple things on record.  I just
                      want to reiterate at your last interview, you were totally truthful with me is that correct?

7       Defendant:    Yeah, of course.

8

9   JSUF ¶ 43; Proctor Decl., Ex. U (DOJ-000391).  Defendant also confirmed that on December 7,

10  2010, he had signed a statement attesting that he married Williams to gain lawful permanent

11  residence more quickly.  JSUF ¶ 44; Proctor Decl., Ex. U (DOJ-000391).  During the follow-up

12  interview, Officer Condon read aloud Defendant's prior statement in his affidavit stating: "I always

13  lived with Julia during the marriage with Nicole, I'm married to Nicole to get the green card

14  sooner."  Id.  She then asked "Is that truthful?"  Id.  Defendant did not provide an audible response,

15  but nodded his head.  Id.  During the interview, Defendant also confirmed that on December 7, 2010,

16  he signed a statement attesting that neither he nor his father had ever practiced Falun Gong.  JSUF ¶

17  45; Proctor Decl., Ex. U (DOJ-000392).

18  On June 1, 2011, the United States Department of Justice sent a letter to Defendant,

19  informing him that the government "has evidence that you illegally obtained your citizenship

20  because you were never lawfully admitted as a permanent resident of the United States, and you

21  procured your naturalization by fraud or willful misrepresentation.  These facts warrant the loss of

22  your United States citizenship under 8 U.S.C. § 1451(a)."  Proctor Decl., Ex. X.  The letter indicated

23  that the Department of Justice planned to institute denaturalization proceedings against Defendant in

24  federal court, but before doing so, would give Defendant the opportunity to settle the case.  Id.

25  The letter further specified:

26      Your naturalization may be revoked on a number of grounds.  First, you
        obtained asylum status in 2000 as a result of your admittedly fraudulent asylum
27      application, based on your alleged membership in Falun Gong, and your fraudulent
        testimony in support of your application.  You used your fraudulently-obtained

28

UNITED STATES DISTRICT COURT
For the Northern District of California

7

asylum status to obtain lawful permanent residence on February 2, 2006.  Based on your unlawfully-obtained permanent resident status, you filed your application for naturalization on November 5, 2009, and became a naturalized United States citizen on March 10, 2010.  Because you were never eligible to obtain status as a permanent resident, you were statutorily barred from naturalization under 8 U.S.C. § 1428(a).

Second, because you procured your visa by fraud, you are inadmissible to the United States under 8 U.S.C. § 1182(a)(6)(C)(I), and were ineligible to naturalize under 8 U.S.C. § 1427(a).  Your sham marriage to Nicole Williams, through which you attempted to procure a visa by fraud, also rendered you inadmissible to the United States, and thus ineligible for naturalization.

Third, the false testimony you provided under oath during your asylum proceedings and when you applied for naturalization adversely reflected upon you ability to demonstrate that you had the good moral character necessary to naturalize, which statutorily barred your from naturalization under 8 U.S.C. § 1427(a).  As a person ineligible to naturalize, your naturalization was illegally procured under 8 U.S.C. § 1451(a).

Finally, the fact that you willfully misrepresented and concealed material facts on your naturalization application when you claimed that you never provided false or misleading information to any United States government official while applying for an immigration benefit – even though you previously provided false information about having been a member of Falun Gong to receive asylum status – renders your naturalization revocable under 8 U.S.C. § 1451(a).

Proctor Decl., Ex. X (DOJ-000000213 - DOJ-000214).

After Defendant received the letter, but before the filing of this lawsuit, on November 18, 2011, Williams executed a declaration attesting that her "marriage to Jie Zhong was a Good Faith Marriage."  JSUF ¶ 47; Proctor Decl., Ex. Y.  Williams also attested that she was "truly in loved [sic] with Jie Zhong."  *Id.*  She further states that when Officer Condon came to her house to speak with her Officer Condon stated that "there was no way a black women [sic] would marry Jie."  *Id.*  After Williams told Officer Condon that she and Defendant were married and now were not, the officer asked for a statement from her.  JSUF ¶ 47.  In her sworn declaration, Williams described her response as follows:

So she asked me to sign something for her stating what we had talked about.  She said that I wasn't in trouble and that no one was coming after me.  She told me that my statement wasn't even going to be used and that she just need [sic] something to show that I was contacted. I didn't really understand the point for a statement.

*Id.*

On March 23, 2012, Defendant was deposed in this litigation.  Proctor Decl., Ex. AA, Deposition of Jie Zhong.  During his deposition, Defendant retracted his prior statements by

8

1   testifying that his marriage to Williams was not fraudulent and that he was involved with Falun

2   Gong. *Id.*

3          Williams was deposed in connection with this action on May 15, 2012. Proctor Decl., Ex.

4   BB. When questioned about the declaration she signed before Officer Condon on November 4,

5   2010, as well as the declaration she signed on November 18, 2011, Williams' attorney objected and

6   indicated that she would not answer, asserting her Fifth Amendment rights against self-

7   incrimination. *Id.*

8          On October 19, 2011, Plaintiff filed this lawsuit pursuant to 8 U.S.C. § 1451(a), seeking to

9   denaturalize Defendant based on four violations. In Count One, Plaintiff alleges that, based on

10  Defendant's statements in his declaration, Defendant never met the definition of a "refugee" under 8

11  U.S.C. § 1101(a)(42), and therefore obtained his asylum status, and thereby his Legal Permanent

12  Resident status, fraudulently. Compl. ¶¶ 32-40. In Count Two, Plaintiff charges that because

13  Defendant procured his asylum status by fraud and willful misrepresentation of material facts, he

14  was inadmissible to the United States and was thus ineligible for naturalization. *Id.* ¶¶ 41-43.

15  Plaintiff further charges that because Defendant entered into a fraudulent marriage with Williams in

16  an attempt to expedite his LPR status, he was inadmissible to the United States, making revocation

17  of his naturalization appropriate pursuant to 8 U.S.C. § 1451(a). *Id.* ¶¶ 48-51. In Count Three,

18  Plaintiff alleges that because Defendant provided false testimony concerning his membership in

19  Falun Gong and that he had never given false or misleading information to any United States

20  government official while applying for an immigration benefit, Defendant lacked the good moral

21  character during the relevant period required under 8 U.S.C. § 1427(a)(3) to be naturalized. *Id.* ¶¶

22  52-62. In Count Four, Plaintiff alleges that Defendant willfully misrepresented and concealed

23  material facts on his naturalization application and provided false and misleading information at his

24  naturalization interview, subjecting his naturalization to revocation pursuant to 8 U.S.C. § 1451(a).

25  *Id.* ¶¶ 63-69. Both parties move for summary judgment on all counts.

26

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

9

UNITED STATES DISTRICT COURT
For the Northern District of California

## III.   LEGAL STANDARDS

**A.      Summary Judgment**

Summary judgment is appropriate only when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to demonstrate that no genuine dispute of material fact remains.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party meets its initial burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (internal quotations and citations omitted).  On summary judgment, courts are required to view the evidence in the light most favorable too the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

**B.      Revocation of Naturalization**

To be eligible for naturalization, a person must: (1) have been lawfully admitted to the United States for permanent residence; (2) be a person of good moral character for at least five years before applying for naturalization; and (3) have resided continuously and have been physically present in the United States for the required statutory period.  8 U.S.C. §§ 1427, 1429.  A person must strictly comply with all of the congressionally-mandated requirements for naturalization; noncompliance with these prerequisites results in the illegal procurement of naturalization and subjects the person to denaturalization proceedings under 8 U.S.C. § 1451(a).  *United States v. Szehinskyj*, 277 F.3d 331. 334 (3d. Cir. 2002) (citations omitted).

Pursuant to 8 U.S.C. § 1451(a), the Government may, upon a showing of good cause, institute proceedings to revoke and set aside the order admitting a naturalized citizen to citizenship and canceling the certificate of naturalization "on the ground that such order and certificate of

10

UNITED STATES DISTRICT COURT
For the Northern District of California

1  naturalization were illegally procured or were procured by concealment of a material fact or by

2  willful misrepresentation . . . ."  "To prevail in a denaturalization proceeding, the government must

3  prove its case by clear, convincing, and unequivocal evidence, and leave no issue in doubt."  *United*

4  *States v. Koziy*, 728 F.2d 1314, 1318 (11th Cir. 1984) (citing *Fedorenko v. United States*, 449 U.S.

5  490, 505 (1981)).  Congress has provided that naturalization should be revoked where the "order

6  [granting naturalization] and certificate of naturalization were illegally procured or were procured by

7  concealment of a material fact or by willful misrepresentation[.]"  8 U.S.C. § 1451(a).  Once a court

8  determines that the government has met its burden of proving that a naturalized citizen obtained his

9  citizenship illegally, or by concealing a material fact or through willful misrepresentation, it has no

10 discretion to excuse the conduct, and must enter a judgment of denatuarlization.  *Fedorenko*, 449

11 U.S. at 517.

## IV.  DISCUSSION

13      Both Plaintiff and Defendant move for summary judgment on each of the four Counts

14 asserted in Plaintiff's Complaint.  The Court will evaluate each one in turn.

**A.     Counts One and Two**

16      1.      Overview

17      In Count One, Plaintiff alleges that Defendant illegally procured naturalization because he

18 fraudulently obtained his asylum status, and later his LPR status, by representing he was affiliated

19 with Falun Gong and feared persecution based on such involvement.  Compl. ¶¶ 32-40.  In Count

20 Two, Plaintiff alleges that Defendant was not lawfully admitted to the United States based on his

21 fraudulent claim of feared prosecution and his fraudulent marriage to Williams.  *Id.* ¶¶ 41-51.  The

22 Court turns first to Plaintiff's allegations of disqualification based on marriage fraud, and then turns

23 to its allegations of asylum fraud.

24      2.      Applicable Law

25      To qualify for naturalization, an applicant must establish that he was lawfully admitted to the

26 United States as a permanent resident in accordance with all applicable provisions of the INA.  8

27 U.S.C. § 1429; *see also* 8 U.S.C. § 1427(a)(1).  Whether an alien is "lawfully" admitted for

28

11

permant residence is an issue of law. *Monet v. INS*, 791 F.2d 752, 753 (9th Cir. 1986). The INA defines the term "lawfully admitted for permanent residence" to mean "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status have not changed." 8 U.S.C. § 1101(a)(20). Courts have consistently held that those who have gained their permanent resident status in an unlawful manner – and who were ineligible for such status – were not "lawfully admitted for permanent residence" within the meaning of the immigration laws. *Kyong Ho Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010) (noting that the holdings in prior decisions broadly deem all grants of [lawful permanent resident] status that were not in substantive compliance with the immigration laws to be void *ab initio*."); *Monet*, 791 F.2d at 754 (holding that an alien who became a lawful permanent resident in error was not eligible for a waiver of deportation because he was not "lawfully" admitted for permanent residence); *Lai Haw Wong . INS*, 474 F.2d 739, 741 (9th Cir. 1973) (affirming BIA's decision that aliens who were admitted for permanent residence in error on visas for which they were not eligible were not conferred a "lawful" status and were not "lawfully admitted for permanent residence"); *Matter of Koloamatangi*, 23 I. & N. Dec. 548 (BIA 2003) (holding individual who obtained permanent resident status based on a bigamous marriage was not "lawfully admitted for permanent residence" and could not qualify for cancellation of removal under 8 U.S.C. § 1229(b)(a)). The Ninth Circuit has held that the term "lawfully" connotes compliance with "'substantive legal requirements, not mere procedural regularity.'" *Monet*, 791 F.2d at 754 (quoting *Matter of Longstaff*, 716 F.2d 1439, 1441 (9th Cir. 1983)).

   3. <u>Defendant's Marriage to Williams</u>

  Plaintiff first argues that Defendant's marriage to Williams was fraudulent and thus rendered him inadmissible to the United States and precluded him from obtaining lawful permanent resident status. Pl. Mot. at 11. Specifically, Plaintiff argues that Defendant married Williams so that he could become a LPR faster than he would if he waited for USCIS to process his original application based on his asylee status. Pl. Mot. at 11. Defendant, however, maintains that his marriage to Williams was valid and therefore does not provide a basis for denaturalization. Def. Opp. at 11-14;

UNITED STATES DISTRICT COURT
For the Northern District of California

Def. Mot. at 9-11.

In support of its argument, Plaintiff relies on the timing of Defendant's marriage and statements that Defendant, Williams, and Chen made in their affidavits.  Plaintiff asserts that at the time Defendant divorced Chen on July 5, 2005, he had been waiting for more than four years for USCIS to process his original application for adjustment of status.  After his divorce from Chen, Defendant married Williams less than a month later, on August 4, 2005.  Shortly thereafter, on November 29, 2005, Williams filed the Form I-130, Petition for Alien Relative, with USCIS to obtain a visa for Defendant as the spouse of a U.S. citizen, and Defendant concurrently filed his second adjustment application based on his marriage to Williams.  Subsequently, after USCIS approved Defendant's initial adjustment application on October 26, 2006, Defendant and Williams filed for divorce.

Plaintiff also asserts that the affidavits that Defendant, Williams, and Chen provided "cement the conclusion that [Defendant] and Williams engaged in marriage fraud."  Mot. at 12.  Plaintiff cites to Williams' November 4, 2010 affidavit, wherein she stated that she married Defendant "as a favor to get a little money," and Chen's December 7, 2010 affidavit wherein she stated that she knew Defendant's marriage to Williams was not "real, but a favor."  Plaintiff also cites to Defendant's December 7, 2010 affidavit wherein he admitted that he never lived with Williams; his marriage to Williams was "always for favor"; he never lived with or had sex with Williams; the marriage was arranged; and that he "married . . . [Williams] to get the green card sooner."  Plaintiff asserts that Defendant later confirmed that he signed the affidavit containing these statements during a follow-up interview that Officer Condon conducted on March 25, 2011.

Taken together, Plaintiff argues that this evidence establishes that Defendant sought to procure an immigration benefit by marriage fraud, and therefore, at the time he adjusted his status, Defendant was inadmissible as an immigrant to the United States under 8 U.S.C. § 1182(a)(6)(C)(I) and ineligible to adjust to LPR status under 8 U.S.C. § 1159(b)(5).  Plaintiff thus asserts that because Defendant was not lawfully admitted to LPR status, he was ineligible for naturalization, and it was illegally procured.

13

UNITED STATES DISTRICT COURT
For the Northern District of California

1    In response, Defendant asserts that his marriage was, in fact, valid and that Plaintiff's

2    reliance on the affidavits that Officer Condon obtained from Defendant, Williams, and Chen is

3    misplaced because Officer Condon coerced them to execute the documents.  Citing to his deposition

4    testimony, Defendant argues that Officer Condon "essentially coerced or pressured him into writing

5    a false affidavit as to the validity of . . . his marriage to Williams, because the officer essentially told

6    him if he did not cooperate he would lose his citizenship."  Def. Mot. at 9; *see* Declaration of Robert

7    Ryan, Ex. 7, Zhong Depo. at 175:8-177:15.  Defendant argues that he later disavowed the statements

8    regarding his marriage to Williams during his deposition and again in his Declaration filed in

9    support of his Opposition brief.  Def. Opp. at 4 (citing Ryan Decl., Ex. 7, Zhong Depo. at 180-81,

10   185; Ryan Decl., Ex. 24 (Declaration of Jie Zhong), Dkt. No. 32-1.  Defendant argues that Williams

11   also disavowed the statements she previously made in her November 4, 2010 affidavit concerning

12   her marriage to Defendant in the affidavit she executed on November 18, 2011.  He points out that in

13   her later affidavit, Williams stated that her marriage was real, yet Officer Condon expressed her

14   disbelief that a black woman would marry Defendant.  Defendant also proffers that Chen disavowed

15   her statements regarding Defendant's marriage to Williams and also testified that she executed the

16   affidavit in response to pressure exuded by Officer Condon.  Ryan Decl., Ex. 20, Chen Depo. at 54-

17   57.  Defendant thus argues that based on his testimony and Williams' 2011 affidavit, the evidence

18   establishes that his marriage to Williams was not fraudulent.

19   Plaintiff counters that Defendant cannot attempt to evade summary judgment be relying on

20   his deposition testimony and Williams' second affidavit.  First, with respect to Williams' November

21   2011 affidavit, Plaintiff argues that where a witness refuses to be examined on the contents of her

22   affidavit, the court must strike the affidavit.  Pl. Mot. at 13.  Plaintiff further argues that the Ninth

23   Circuit recently extended to civil proceedings its holding that "a district court may strike the

24   testimony of a witness in a criminal proceeding to avoid a witness's improper use of the Fifth

25   Amendment privilege against self-incrimination as a sword as well as a shield."  *Id.* (citing *United*

26   *States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 641 (9th Cir. 2012)).  As Plaintiff points out,

27   during her deposition, Williams invoked her rights under the Fifth Amendment and refused to

28

14

UNITED STATES DISTRICT COURT
For the Northern District of California

answer questions regarding the contents of the affidavit.  *See* Proctor Decl., Ex. BB, Williams Depo. at 70:1-76:7.  Nevertheless, Defendant asserts that given the allegation of coercion at issue in this case, it would be unfair to strike the affidavit on the ground that Williams invoked her Fifth Amendment rights.  Def. Opp. at 12.  The Court is unpersuaded by Defendant's argument.  Under Ninth Circuit law, because Williams invoked her Fifth Amendment rights and refused to be questioned about her representations in the affidavit, Defendant may not now rely on those statements as evidence in this case.  The Court therefore strikes Williams' November 18, 2011 affidavit.

With respect to Defendant's deposition testimony and declaration filed in support of his Opposition, Plaintiff argues that Defendant cannot create a genuine issue of material fact by contradicting his sworn testimony and affidavit with deposition testimony provided over a year later, and cites *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) and *Pacific Ins. Co. v. Kent*, 120 F. Supp. 2d 1205, 1213 (C.D. Cal. 2000), in support.  Particularly, Plaintiff argues that, "contradictory deposition testimony should be disregarded when there was no ambiguity in the questions or answers during the initial sworn statement, and when the deponent's explanation did not establish confusion or lack of understanding of the prior sworn statement."  Pl. Mot. at 14 (citing *Pac. Ins. Co.*, 120 F. Supp. 2d 1213-14.

In *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009), the Ninth Circuit discussed the sham affidavit rule articulated in *Kennedy*:

> "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  Every circuit has some form of "sham affidavit" rule similar to our own.  *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526     U.S. 795, 806–07 (1999) (collecting cases).
>
> The Supreme Court has explained that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted).  Some form of the sham affidavit rule is necessary to maintain this principle.  This is because, as we have explained, "if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."  *Kennedy*, 952 F.2d at 266 (quoting *Foster v. Arcata Assocs.*,

1    *Inc.*, 772 F.2d 1453, 1462 (9th Cir. 1985)).

2         At the same time, however, it must be recognized that the sham affidavit rule
3    is in tension with the principle that a court's role in deciding a summary judgment
     motion is not to make credibility determinations or weigh conflicting evidence.
     Aggressive invocation of the rule also threatens to ensnare parties who may have
4    simply been confused during their deposition testimony and may encourage
     gamesmanship by opposing attorneys.  We have thus recognized that the sham
5    affidavit rule "should be applied with caution."  *Sch. Dist. No. 1J v. ACandS, Inc.*, 5
     F.3d 1255, 1264 (9th Cir. 1993); *see also Nelson v. City of Davis*, 571 F.3d 924 (9th
6    Cir. 2009).

7         More specifically, we have fashioned two important limitations on a district
     court's discretion to invoke the sham affidavit rule.  First, we have made clear that
8    the rule "does not automatically dispose of every case in which a contradictory
     affidavit is introduced to explain portions of earlier deposition testimony," *Kennedy*,
9    952 F.2d at 266–67; rather, "the district court must make a factual determination that
     the contradiction was actually a 'sham.'"  *Id.* at 267.  Second, our cases have
10   emphasized that the inconsistency between a party's deposition testimony and
     subsequent affidavit must be clear and unambiguous to justify striking the affidavit.
11   Thus, "the non-moving party is not precluded from elaborating upon, explaining or
     clarifying prior testimony elicited by opposing counsel on deposition [and] minor
12   inconsistencies that result from an honest discrepancy, a mistake, or newly
     discovered evidence afford no basis for excluding an opposition affidavit."  *Messick*
13   *v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995).

14   Here, the difference between Defendant's December 7, 2010 affidavit and his later deposition

15   testimony are more than mere inconsistencies – Defendant completely disavows the statements in

16   his affidavit, proffering that those statements were made under duress and at Officer Condon's

17   direction.  Such circumstances fall outside the baseline rule set forth in *Kennedy*.  As indicated

18   above, the Ninth Circuit has cautioned that courts should exercise their discretion carefully when a

19   party's subsequent affidavit explains or clarifies prior testimony.  *See id.*  In this case, whether

20   Defendant's deposition testimony and his declaration are a sham turns on whether the Court finds

21   Defendant's allegation of coercion by Officer Condon credible.  If, as Defendant avers, Officer

22   Condon pressured him – as well as Chen and Williams – to make the statements concerning

23   Defendant's marriage, then Defendant's subsequent testimony correcting and explaining his prior

24   statements is not a sham.  Significantly, to make this determination, the Court must tread into areas

25   of credibility, which is inappropriate in the summary judgment context.  The Court is also cautious

26   about invoking the rule in this case because, as Defendant highlighted during oral argument, the

27   immigration context is markedly different from the typical deposition in civil litigation.  Defendant's

28

UNITED STATES DISTRICT COURT
For the Northern District of California

16

UNITED STATES DISTRICT COURT
For the Northern District of California

1   allegation of coercive tactics during the interview process is significant enough to persuade the

2   Court that it should defer determining which set of statements present an accurate description of

3   Defendant's marriage until after the Court has had an opportunity to hear testimony from Defendant,

4   as well as Officer Condon, about the dynamics of December 7, 2010 interview.  Accordingly, in the

5   exercise of its discretion, the Court declines to strike Defendant's deposition testimony or

6   declaration proffered in support of his Opposition brief to the extent they contradict statements

7   concerning his marriage in his December 7, 2010 affidavit.  Consequently, because this evidence

8   creates triable issues of fact with respect to the legitimacy of Defendant's marriage to Williams, and

9   thus whether Defendant sought to procure an immigration benefit by marriage fraud, summary

10   judgment on Count Two on Plaintiff's Complaint is **DENIED**.

11          4.      Asylum Fraud

12          Counts One and Two are also premised on Plaintiff's allegation that Defendant committed

13   asylum fraud, which rendered him inadmissible to the United States and precluded him from

14   obtaining LPR status.

15          An asylee may apply for adjustment of status to that of lawful permanent resident pursuant to

16   8 U.S.C. § 1159 if the applicant has been physically present in the United States for at least one year

17   after having been granted asylum.  8 U.S.C. § 1159(b)(2).  In order to be eligible for asylee status, an

18   applicant must establish that he is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42).  8

19   U.S.C. § 1158(b)(1)(A).  Pursuant to 8 U.S.C. § 1101(a)(42)(A), a refugee is "any person who is

20   outside any country of such person's nationality or, in the case of a person having no nationality, is

21   outside any country in which such person last habitually resided, and who is unable or unwilling to

22   return to, and is unable or unwilling to avail himself or herself of the protection of, that country

23   because of persecution or a well-founded fear of persecution on account of race, religion,

24   nationality, membership in a particular social group, or political opinion."

25          Plaintiff contends that when Defendant applied for asylum status on May 9, 2000, he based

26   his claim on his alleged fear of persecution in China related to his and his father's practice of Falun

27   Gong.  Pl. Mot. at 15 (citing Condon Decl., Ex. A (DOJ-000354-374)).  Plaintiff argues that

28

1    Defendant's claim was later belied by his December 7, 2010 affidavit in which he confessed that his

2    "asylum claim was fake." *Id.* (citing Condon Decl., Ex. T (DOJ-000225)).  Plaintiff points out that

3    in that affidavit, Plaintiff states that he "had never been involved with Falun Gong," that his "father

4    had never practiced Falun Gong" and had "never been arrested for anything Falun Gong related,"

5    and that his "[a]sylum preparer Steve Mao told me to memorize the fake Falun Gong story back to

6    year 2000." *Id.*  With respect to why he came to the United States, Defendant stated that he "never

7    fear [sic] China (but I prefer the U.S.)." *Id.*  Further, Plaintiff argues that when Officer Condon

8    asked Defendant during his March 25, 2011 interview whether the statements in his December 7,

9    2010 affidavit were true, Defendant responded, "yes, of course," and he confirmed that neither he

10   nor his father ever practiced Falun Gong.  Pl. Mot. at 15 (citing Condon Decl., Ex. V at 8:00; Proctor

11   Decl., Ex. U (DOJ-000391-92)).  Plaintiff thus argues that, because Defendant has repeatedly

12   admitted he was never persecuted in China and did not fear persecution, he was never a refugee

13   within the meaning of 8 U.S.C. § 1101(a)(42) and was ineligible to obtain lawful permanent resident

14   status pursuant to 8 U.S.C. § 1159(b)(3). Pl. Mot. at 16.  It argues that Defendant was therefore not

15   a lawfully admitted permanent resident when he applied to become a citizen, and his naturalization

16   must be revoked under 8 U.S.C. § 1451(a). *Id.*

17           As with Plaintiff's allegation of marriage fraud, Defendant maintains that he was coerced to

18   make the false statements by Officer Condon during the December 7, 2010 interview after Officer

19   Condon told him if he did not cooperate he would lose his citizenship.  Def. Opp. at 6, 9.  Citing to

20   his declaration in support of his Opposition brief, Defendant asserts that he explained during his

21   March 2011 deposition that the statements he made in support of his asylum application concerning

22   his involvement with Falun Gong were true and that he feared returning to China because the

23   Chinese government considered him to be a Falun Gong leader.  Def. Opp. at 9-10 (citing Ryan

24   Decl. Ex. 24, Zhong Decl., Dkt. No. 32).  Defendant thus argues that Plaintiff cannot establish that

25   he committed asylum fraud at any point during the immigration process.

26           With respect to Defendant's deposition testimony disavowing the statements he made in his

27   December 7, 2010 affidavit, Plaintiff reasserts that Defendant cannot defeat summary judgment by

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    contradicting his prior sworn testimony. Pl. Mot. at 15-16. However, for the reasons set forth

2    above, the Court declines to strike Defendant's testimony or statements in his declaration regarding

3    his and his family's affiliation with Falun Gong. Because Defendant's proffered testimony creates a

4    triable issue of fact as to whether Defendant qualified to be a refugee and was later eligible for LPR

5    status, the Court **DENIES** summary judgment on Counts One and Two.

6    **B.      Count Three**

7           In Count Three, Plaintiff asserts that Defendant illegally procured his naturalization because

8    he lacked the good moral character required to naturalize. Compl. at 7-8; Pl. Mot. at 16.

9           The INA provides that no person shall be naturalized unless the person "during all the period

10   referred to in this subsection has been and still is a person of good moral character . . . ." 8 U.S.C. §

11   1427(a)(3). The statutory period for which good moral character is required begins five years before

12   an applicant files a naturalization application and extends until the applicant takes the oath of

13   allegiance and becomes a United States citizen. *Id*. Defendant filed his naturalization application on

14   November 4, 2009. JSUF ¶ 23; Condon Decl., Ex. K. Thus, Defendant was required to establish

15   that he was a person of good moral character from November 4, 2004, through March 10, 2010.

16          Plaintiff argues that Defendant was statutorily precluded from establishing that he satisfied

17   the good moral character requirement because he provided false testimony to obtain an immigration

18   benefit during the statutory period. Pl. Mot. at 16. Under 8 U.S.C. § 1101(f)(6), "No person shall be

19   regarded as, or found to be, a person of good moral character who, during the period for which good

20   moral character is required to be established, is, or was . . . one who has given false testimony for the

21   purpose of obtaining any benefits under this chapter[.]" False testimony includes false statements

22   made orally under oath during a naturalization interview. *Ramos v. INS*, 246 F.3d 1264, 1265 (9th

23   Cir. 2001) (citing *Bernal v. INS*, 154 F.3d 1020, 1023 (9th Cir. 1998)). To fall within § 1101(f)(6), a

24   person must make false statements, regardless of materiality, with the subjective intent of obtaining

25   an immigration benefit. *Kungys v. United States*, 485 U.S. 759, 780 (1988); *Ramos*, 246 F.3d at

26   1265. Accordingly, to revoke Defendant's naturalization, Plaintiff must establish that Defendant

27   lied under oath during his naturalization interview and that he did so to gain an immigration benefit.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Toward this end, Plaintiff argues that Defendant provided false testimony to obtain his U.S.

2    citizenship when, on January 22, 2010, he testified under oath that he had practiced Falun Gong and

3    that he feared returning to China.  Pl. Mot. at 17.  Plaintiff argues that Defendant admitted to USCIS

4    on December 7, 2010 and March 25, 2011, that his asylum claim was fake, that neither he nor his

5    father ever participated in Falun Gong or were persecuted for doing so, and that he did not fear

6    returning to China.  *Id.*  Thus, Plaintiff asserts that because Defendant provided this false oral

7    testimony under oath during the statutory period to obtain an immigration benefit, he did not possess

8    the good moral character required to naturalize.

9    As discussed above, because consideration of Defendant's December 7, 2010 affidavit raises

10   issues of credibility, the Court cannot make any determination as to the veracity of statements made

11   in that affidavit.  Accordingly, because triable issues of fact exist as to whether Defendant lacked the

12   good moral character required to naturalize because he provided false testimony, the Court **DENIES**

13   summary judgment on Count Three.

14   **C.    Count Four**

15   In Count Four, Plaintiff charges that Defendant willfully misrepresented and concealed

16   material facts on his naturalization application when he claimed that he had never provided false or

17   misleading information to any U.S. government official while applying for any immigration benefit.

18   Compl. ¶ 64.

19   Pursuant to 8 U.S.C. § 1451(a), the Government may institute proceedings to revoke and set

20   aside the order admitting a person to citizenship and canceling the certificate of naturalization "on

21   the ground that such order and certificate or naturalization were illegally procured or were procured

22   by concealment of a material fact or by willful misrepresentation . . . ."  To revoke naturalization

23   under this section: (1) the naturalized citizen must have misrepresented or concealed some fact; (2)

24   the misrepresentation or concealment must have been willful; (3) the fact must have been material;

25   and (4) the naturalized citizen must have procured citizenship as a result of the misrepresentation or

26   concealment.  *See Kungys*, 485 U.S. at 767.

27   Here, Plaintiff argues that Defendant provided false and misleading information to U.S.

28

20

UNITED STATES DISTRICT COURT
For the Northern District of California

1   government officials when he signed and filed his asylum application, and when he testified at his

2   asylum interview that he had been a member of Falun Gong and feared persecution in China.  Pl.

3   Mot. at 17-18.  Plaintiff contends that Defendant also willfully misrepresented and concealed

4   material facts when, during his naturalization interview, he falsely claimed to have been a member

5   of Falun Gong.  Based on the foregoing, Plaintiff argues that Defendant is subject to

6   denaturalization.

7        As with the previous counts discussed, a genuine issue of fact exists as to Defendant's

8   involvement with Falun Gong that cannot be resolved on the record at this time because it involves

9   credibility determinations.  The Court therefore **DENIES** summary judgment on Count Four.

10                                   **V.   CONCLUSION**

11        For the reasons set forth above, the Court **DENIES** both Plaintiff's Motion for Summary

12   Judgment (Dkt. No. 22), and Defendant's Motion for Summary Judgment (Dkt. No. 30).

13        By separate order, the Court sets this matter for trial on <u>March 13, 2013</u>.

14        **IT IS SO ORDERED.**

15

16   Dated: December 12, 2012

17                                   _____
                                     Maria-Elena James
18                                   Chief United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28